DECISION
Plaintiff Peter Garcia, has requested this Court to grant him a new trial as to defendant Ford Motor Company alter a jury returned a verdict in Ford's favor.
The plaintiff cites, without limitation, the following errors of the trial judge.
 1. Improper limitation of the examination of plaintiffs and defendant's experts.
 2. Refusal to admit evidence of defendant's awareness of single brake system dangers as related to the U-Haul Company.
 3. Improper jury instructions.
 4. Admission of plaintiffs settlement with Aquidneck Island Tire which proclaimed the vehicle to be in conformance with state inspection standards.
With regard to Error 1, plaintiff argues that the court deprived the jury of a "critical piece of evidence" and "actively created a distorted record regarding the existence of applicable braking standards." Plaintiff sought to introduce SAE (Society of Automotive Engineers) standards, SAE J-992B SAE J-786. In essence, these were not industry standards, but "recommended practices" for braking performance. (See Tr. 305) Furthermore, the cited sections applied exclusively to dual braking systems and not the single system in controversy. Plaintiff's expert's product defect theory was that all single systems were ipso facto defective, (see Tr. 307, 308) even though they conformed to industry standards and the state of the art at the time of their manufacture. Despite the fact that the lawsuit had been pending for 5 years and plaintiff's expert had been exhaustively deposed, SAE citations were never mentioned until the time of trial. The court stands by its ruling concerning the inadmissibility of this material. (Tr. 360)
Plaintiff next complains that the court abused its discretion by precluding the introduction of documents which would reveal an awareness, on Ford's part, of a safety problem with the single system. The documents in question are comprised of correspondence between Ford and a fleet customer, U-Haul, with reference to retrofitting brake lines on the F-600 truck series. The F-600 is obviously a totally different vehicle than the LN 600 at issue. The retrofitting occurred not as the result of a recall or notice of danger, but as the result of a private customer's request for assistance with enhanced maintenance. The retrofit involved the replacement of corroded flex hoses. Plaintiffs theory regarding those hoses was that the inspector defendant, not Ford, was negligent in failing to detect corrosion on the failed part. Plaintiffs own expert, Mr. Zamparo, laid the blame in this aspect squarely upon Aquidneck Tire (Tr. 14). As this Court has stated before, it would be clearly unfair to compel Ford to defend the material contained in the U-Haul documents. Moreover, the correspondence is neither relevant nor material since it would in no way assist the trier of fact in determining where there was a design defect in the LN 600. (Tr. 35). There was no abuse of discretion or error of law.
The plaintiffs next allegation of an error of law is that the court "suggested" in its instructions that Ford's conformity to industry standards indicated a reasonable course of conduct. Counsel states that "clearly this is not the law, as indicated by other instructions which counsel recalls the Court giving." (Emphasis supplied).
Instructions must be considered as a whole in order to assess their propriety. The objection in counsel's brief is non-specific, without citation to the record and based, at least in part, upon counsel's "recollection." Thus, it is impossible for the court to fairly respond. The Court stands by its rulings in the trial transcript
Finally, the plaintiff requests a new trial because the Court allowed Ford's counsel to inquire of the plaintiff, the amount of a. settlement which plaintiff reached with Aquidneck Island Tire. This material, plaintiff contends, encouraged the jury to believe plaintiff had been compensated "enough." Plaintiff relies on a March 17, 2000 opinion of the Rhode Island Supreme Court, Votolato v. Merandi. In that case, plaintiff's 16 year old decedent was a passenger in a Chevrolet Blazer being driven by Candace Parillo. At the same time Parillo was entering the intersection of Francis Street and Memorial Boulevard in Providence, so was a Providence police cruiser being operated by Officer William Merandi. The cruiser struck the right rear passenger side of the Blazer causing it to flip over several times and partially eject the teenager who perished. The trial judge allowed the jury to be informed that driver Parillo had settled with plaintiff for $95,000. In a motion for a new trial the judge declared the admission of the settlement to constitute an error of law.
In the Votolato decision, which postdated the trial of the instant matter, our Supreme Court concluded that "unless evidence of a settlement is relevant to some issue, other than the quantum of damages, a trial justice is instructed to bar the admission of such evidence and subsequently to make the appropriate reduction in any jury award rendered in favor of the plaintiff?' The Votolato trial record revealed the court stated, that "the evidence was presented in an effort to demonstrate to the jury that Parillo, as the driver of the Blazer was more than partially responsible for the fatal injuries sustained by [the decedent]; or, alternatively to demonstrate that the plaintiff was highly litigious and intent on suing all potential tort feasors, regardless of fault."
In this case, the issue of plaintiff's settlement with another defendant was first raised by Ford's counsel who requested permission to reference the settlement in his opening statement Plaintiff's counsel did not object to the fact of the settlement, only the figure, stating that "the number is irrelevant, and it's potentially prejudicial?' (Tr. 60). During the actual questioning of the plaintiff, there were no objections, nor requests for cautionary instructions, during this line of questioning:
 Counsel for Ford: Q: Have you received any moneys in settlement from other parties in this case?
 Plaintiff: A: I haven't received any, no.
 Q: But a settlement has been negotiated on your behalf with respect to one of the parties that was in this case, is that tight?
 A: Yes, Sir.
 Q: And which party was that?
 A: Newport Tire.
 Q: The company that perfonned the inspection?
 A: Yes, Sir.
 Q: What was the amount of the settlement?
 A: $750,000.
(Tr. 224-225).
Query whether this issue is properly preserved for appellate review.
Plaintiff's own counsel asked his own products liability expert to opine on Aquidneck's negligence.
 Q: Now, with respect to Aquidneck or Newport Tire, do you have an opinion as to whether or not Aquidneck was negligent in failing to detect the corrosion on the failed part?
 A: Yes.
 Q: And what is that?
 A: That they were negligent in not detecting the amount of corrosion.
(Tr. 414).
The expert's opinion as to Ford's liability, however, was that the LN 600 was a defective and unreasonably dangerous product because it had a single, as opposed to dual brake system design when it left the Ford plant in 1977. The subsequent negligent maintenance and inspection was asserted as a defense by Ford in that it constituted an intervening cause of the accident. The jurors never reached that issue, however, because they found that the truck was not a defective product. Surely, the jury would have wondered why Aquidneck Tire was absent from the court proceedings if uninformed regarding the settlement
Additionally, the jury was clearly instructed that the fact and the amount of the settlement was to be given no consideration in apportioning negligence or fashioning an award. The facts and the theories of liability put forth in the instant case are very different than those inVotolato which furnishes no basis for a new trial.
For all the above-stated reasons and incorporating by reference its reasoning in the trial transcript, the court declines to grant plaintiff's motion for a new trial.